IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-01723-NYW

ADAM ISHAG SHOUGAR,

    Plaintiff,

v.

UR M. JADDOU, in her official capacity, and
RENA BITTER, in her official capacity,

    Defendants.

## ORDER ON MOTION TO DISMISS

This matter is before the Court on the Motion to Dismiss (or "Motion") filed on November 15, 2023. [Doc. 13]. The Court has reviewed the Motion, the Parties' briefing, and the applicable case law, and concludes that oral argument would not materially assist in the resolution of the Motion. For the reasons set forth in this Order, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

The Refugee Act of 1980 ("Refugee Act") amended the Immigration and Nationality Act ("INA") "to provide a permanent and systematic procedure for the admission to this country of refugees of special humanitarian concern to the United States, and to provide comprehensive and uniform provisions for the effective resettlement and absorption of those refugees who are admitted." Pub. L. No. 96-212, § 101(b), 94 Stat. 102. The Refugee Act provides that a child or spouse of a refugee admitted to the United States "shall . . . be entitled to the same admission status as such refugee if accompanying, or

following to join, such refugee and if the spouse or child is admissible." 8 U.S.C. § 1157(c)(2)(A).

Plaintiff Adam Ishag Shougar ("Plaintiff" or "Mr. Shougar") is a United States citizen who came to the country in 2015 as a Sudanese refugee. [Doc. 1 at ¶¶ 1, 12]. In 2017, Mr. Shougar applied for refugee status for his wife, stepdaughter, and son, who currently live in an Ethiopian refugee camp, by filing Form I-730 petitions with the United States Citizenship and Immigration Services ("USCIS"). [*Id.* at ¶¶ 3, 5]. In 2020, USCIS requested additional evidence from Mr. Shougar, who provided what was requested. [*Id.* at ¶¶ 49–54]. Relevant here, the request for evidence informed Mr. Shougar that he could voluntarily provide DNA test results to establish his relationship with his son. [*Id.* at ¶ 50]. Mr. Shougar scheduled a DNA test for himself, which was completed sometime "[s]oon after" he submitted additional evidence in early 2021, and the DNA sample was submitted to the U.S. Embassy in Addis Ababa, Ethiopia. [*Id.* at ¶¶ 51–54]. The Ethiopian Embassy did not schedule DNA collection for Mr. Shougar's son until April 2023. [*Id.* at ¶ 57]. The test results confirmed the relationship between Plaintiff and his son and USCIS was promptly notified of the results. [*Id.* at ¶ 58].

As of July 2023, USCIS still had not adjudicated the Form I-730 petitions. [*Id.* at ¶ 59]. Plaintiff initiated this cause of action on July 7, 2023 to, inter alia, compel USCIS and the United States Department of State (the "State Department") to "make a final decision on [his] follow-to-join applications." [*Id.* at 15]. He names Ur M. Jaddou, the Director of USCIS, and Rena Bitter, the Assistant Secretary of State for Consular Affairs, which is a component agency of the State Department, as Defendants in the case, [*id.*

2

at 1],[1] and raises three claims for relief: one alleging a violation of the Administrative Procedure Act ("APA"), one under the Mandamus Act, and one alleging a violation of the Fifth Amendment's Due Process Clause, [*id.* at 13–14]. Defendants now move to dismiss Plaintiff's claims, arguing that the claims against USCIS are moot because USCIS approved Plaintiff's I-730 petitions on October 4, 2023, [Doc. 13 at 5–9; Doc. 13-1 at ¶ 4], and that the claims against the State Department fail to state a claim under Rule 12(b)(6), [Doc. 13 at 9–15].

## LEGAL STANDARDS

### I. Rule 12(b)(1)

Under Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim. Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) (quotation omitted). The burden of establishing jurisdiction rests with the party asserting jurisdiction—here, Plaintiff. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

---

[1] An official-capacity claim against an officer of a government agency is, in essence, a claim against the agency itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Because Director Jaddou and Secretary Bitter are sued in their official capacities, the Court refers to Defendants as "USCIS" and the "State Department," respectively.

A motion under Rule 12(b)(1) can mount either a facial or factual attack on the court's subject matter jurisdiction. A facial attack questions the sufficiency of the complaint, accepting the facts therein as true but arguing that they are insufficient to establish the court's jurisdiction. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). A factual attack, on the other hand, goes beyond the allegations in the complaint and "challenge[s] the facts upon which subject matter jurisdiction depends." *Id.* (quotation omitted). "When a defendant brings a factual attack, a district court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). The district court's consideration of those extraneous materials does not require converting the Rule 12(b)(1) motion into a motion for summary judgment unless the resolution of the jurisdictional question is intertwined with the merits of the case. *Id.*[2]

## II.   Rule 12(b)(6)

A court may also dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient

---

[2] No Party argues that the jurisdictional question is intertwined with the merits of this case or that the Court's consideration of extraneous materials requires converting the Motion to Dismiss into a motion for summary judgment. *See* [Doc. 13; Doc. 14].

4

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

### I. Subject Matter Jurisdiction

The mootness doctrine "is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies." *Unified Sch. Dist. No. 259 v. Disability Rts. Ctr. of Kan.*, 491 F.3d 1143, 1147 (10th Cir. 2007). It ensures that "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) . . . continue[s] throughout its existence (mootness).'" *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019); *see also Burke v. Barnes*, 479 U.S. 361, 363 (1987) ("Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case.").

"A case becomes moot when factual developments render a claim 'no longer live and ongoing,' such that a decision on the merits will not 'affect the behavior of the defendant toward the plaintiff.'" *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012) (quoting *McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999)). "Mootness usually results when a plaintiff has standing at the beginning of a case, but, due to intervening events, loses one of the elements of standing during litigation." *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012). In determining whether a claim is moot, "[t]he crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010) (quotation omitted).

5

### A. The Reunification Process

If a refugee admitted to the United States has an admissible spouse or child, that family member is "entitled to the same admission status" as the refugee. 8 U.S.C. § 1157(c)(2)(A); 8 C.F.R. § 207.7(a). A refugee begins the family reunification process by filing a Form I-730 petition for their qualifying family member. 8 C.F.R. § 207.7(a), (d); 9 FAM 203.6-4(a);[3] *Mohamed v. Jaddou*, No. 0:23-cv-00902-JRT-LIB, 2024 WL 477098, at *2 (D. Minn. Feb. 7, 2024). The authority to "adjudicate and process" Form I-730 petitions "rests exclusively with" the Department of Homeland Security ("DHS"), through USCIS, the DHS administering agency. 9 FAM 203.6-3(a)(1)–(2).

"The I-730 petition has two distinct phases." *Mohamed*, 2024 WL 477098, at *2. "First, USCIS must grant approval of the petition if the principal refugee establishes a qualifying relationship such as a spouse or unmarried minor child." *Id.* (citing 8 C.F.R. § 207.7(a), (d)). "Then, depending on where the principal refugee's family is located, USCIS will either make travel determinations about the family members or transition the petition to [the State Department] to make those same travel determinations." *Id.* (citing 8 C.F.R. § 207.7(f)(2)). Specifically, where "USCIS does not have a permanent office or jurisdiction," 9 FAM 203.3-4(b)(3)(b), i.e., countries where USCIS does not have a field office, *see Mohamed*, 2024 WL 477098, at *2, USCIS "delegates the authority to process

---

[3] The "FAM" is the State Department's "Foreign Affairs Manual." The Court takes judicial notice of the FAM, *see Euzebio v. McDonough*, 989 F.3d 1305, 1323 n.9 (Fed. Cir. 2021), which both Parties cite to and rely on in their briefing.

In reviewing the briefs, the Court observed that many of the Parties' citations to the FAM appeared to be directed to provisions that were moved or omitted by recent amendments. [Doc. 18 at 1]. Accordingly, on May 7, 2024, the Court ordered the Parties to file a joint status report with updated citations, [*id.*], which the Parties did, *see* [Doc. 19]. The Court appreciates the Parties' helpful efforts.

6

. . . beneficiaries to consular officers," 9 FAM 203.3-4(b)(3)(b), "while reserving the right to review any discrepancies in the petition," *Mohamed*, 2024 WL 477098, at *2; 8 C.F.R. § 207.7(f)(2); 9 FAM § 203.6-3(a)(4). In those cases, "[c]onsular officers act as agents of USCIS to facilitate [beneficiary] case processing abroad and to verify the identity and eligibility of the following-to-join beneficiaries." 9 FAM 203.6-3(a)(4). These State Department employees "do all . . . parts of [beneficiary] case processing" except for "adjudication of the Form I-730 petition," including "scheduling and conducting the interview, determining eligibility to travel, collecting biometrics, conducting or verifying required security checks, and issuing the foil and travel packet . . . if travel is approved." 9 FAM 203.3-4(b)(3)(b). On the other hand, if USCIS does have a field office in the country where the joining family member is located, USCIS completes these overseas case-processing steps itself. *See, e.g.*, 9 FAM 203.3-4(b); *Mohamed*, 2024 WL 477098, at *2; *N.A. v. Jaddou*, No. 3:23-cv-01634-AJB-BGS, 2024 WL 1898470, at *4 (S.D. Cal. Apr. 30, 2024).

B.      **Whether Plaintiff's Claims Against USCIS are Moot**

USCIS argues that Plaintiff's claims against USCIS are moot because "USCIS has already adjudicated" his petitions by approving them. [Doc. 13 at 5]. USCIS's argument frames the administration of follow-to-join cases as a bifurcated process with clear divisions as to agency authority over each step. It argues that when USCIS approves an I-730 petition, this "completes [its] action on the petition." [*Id.* at 2–3]. Then, it contends, "[o]verseas processing" of the beneficiary's case "is handled by the State Department." [*Id.* at 3–5]. It is the State Department, according to USCIS, that will determine travel eligibility and issue the documents necessary for the beneficiary to enter the United

7

States. [*Id.* at 4–5]. USCIS argues that because it has completed its duties with respect to Mr. Shougar's petitions, his claims against it are moot. [*Id.* at 5–7].

In support of its argument, USCIS relies on a declaration from Emery Moore ("Mr. Moore"), the Section Chief of the Asylum Vetting Center within USCIS's Refugee, Asylum, and International Operations Directorate. [Doc. 13-1 at ¶ 1]. Mr. Moore states that USCIS approved Plaintiff's three petitions on October 4, 2023 and transmitted the approved petitions to the National Visa Center, to be routed to the U.S. Embassy in Ethiopia, the next day. [*Id.* at ¶¶ 4–7]. He states that "USCIS [has] completed adjudication of the three Form I-730 petitions and currently has no responsibility for conducting travel eligibility determinations in Ethiopia," such that "there is no further action USCIS can take on Plaintiff's matter at this time." [*Id.* at ¶ 9]; *see also* [Doc. 13-2 at 1].[4]

---

[4] USCIS argues that it asserts a factual attack about "whether USCIS has any authority over the I-730 process after it has adjudicated and approved the I-730 petitions." [Doc. 15 at 3]; *see also* [Doc. 13 at 5]. A factual attack challenges the very facts upon which subject matter jurisdiction rests, and the Court may consider evidence to resolve "disputed jurisdictional facts." *Baker*, 979 F.3d at 872 (quotation omitted). The Court finds, however, that USCIS's challenge is not a clear-cut factual attack. Although it presents facts that contradict the allegations in the Complaint, *compare* [Doc. 13 at 6 ("On or around October 4, 2023, USCIS adjudicated and approved Plaintiff's three I-730 Petitions.")], *with* [Doc. 1 at ¶ 4 ("Mr. Shougar is still waiting for [USCIS] to complete the first stage of processing.")], there does not actually appear to be any *factual* dispute here, as Plaintiff agrees that USCIS has approved his petitions since he filed his Complaint, *see* [Doc. 14 at 12]. The jurisdictional inquiry does not turn on the resolution of any disputed fact; rather, in the Court's view, the Parties' dispute boils down to the *legal question* of whether, under the applicable statutes, rules, and regulations, USCIS's approval of the petitions ends USCIS's involvement in the matter. Accordingly, while the Court will consider Mr. Moore's declaration to the extent it provides new information about USCIS's approval of the petitions, which is indeed relevant to the Court's analysis, the Court must undertake its own analysis as to the legal consequences of that approval. Furthermore, while Defendants have submitted a supplemental declaration from Mr. Moore, *see* [Doc. 15-1], the Court does not consider this document, as Plaintiff has not been given an opportunity to respond to it via surreply, *see Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003) (finding that the district court

Plaintiff disagrees that his claims against the USCIS are moot.  He argues that the follow-to-join process "is a single process with two phases" that "is not complete until the beneficiary receives a final decision," [Doc. 14 at 2, 8–9], i.e., the express relief requested in the Complaint, [Doc. 1 at 14–15].  In Plaintiff's view, USCIS's responsibility and authority over I-730 petitions "continues through overseas processing until the beneficiary is permitted to travel and obtain admission as a refugee, or the petition is denied," [Doc. 14 at 13], and he argues that "USCIS cannot shirk [its] statutory responsibility merely because the beneficiary happens to be in a country where it outsources tasks to [the State Department] rather than maintains its own field office," [*id.* at 14].

The Parties do not differentiate between Plaintiff's claims in raising their mootness arguments or argue that different standards apply to different claims; accordingly, the Court analyzes Plaintiff's claims against USCIS as a whole.

Two other district courts have recently concluded that "DHS, through its subsidiary USCIS, maintains control over the entire adjudication of I-730 petitions" and that "USCIS cannot escape liability or responsibility by passing off an I-730 petition to [the State Department]."  *Mohamed*, 2024 WL 477098, at *3; *see also N.A.*, 2024 WL 1898470, at *5 ("The Court . . . finds USCIS maintains control over the entire adjudication of I-730 petitions.").  This case presents a difficult legal question and both Parties have presented well-reasoned arguments in support of their respective positions.  Ultimately, though, the Court agrees with the position of Plaintiff and the *Mohamed* and *N.A.* courts.

---

abused its discretion when it relied on new evidence submitted with reply brief without permitting surreply).

The Parties agree that USCIS has exclusive authority over the adjudication of I-730 petitions.  8 U.S.C. § 1157(c); 6 U.S.C. § 271(b)(3) (USCIS has authority over "[a]djudications of asylum and refugee applications"); [Doc. 13 at 2; Doc. 14 at 14].  The Court thus starts from the position that USCIS has authority over the *entirety* of the I-730 petition process, from initial filing to final decision.

Despite USCIS's insistence that its role in the process ends after it approves a petition, "someone must maintain processing power over I-730 petitions until they are either denied or until travel authorization is issued."  *Mohamed*, 2024 WL 477098, at *3.  USCIS nevertheless takes the position that authority over the follow-to-join case is transferred to the State Department once it approves a petition.  *See* [Doc. 13 at 6 ("USCIS has no authority to conduct travel eligibility determinations, and there is no further action USCIS can take on Plaintiff's I-730 petitions at this time.")].  But notably, the State Department's own manual suggests that the State Department does not share the view that it absorbs any ultimate authority over case processing.  Indeed, the FAM, which both sides rely on in their briefing, states that "[a]s a matter of law, authority to adjudicate <u>and process</u> affirmative refugee applications, including the Form I-730 petition for following-to-join derivatives of refugees, <u>rests exclusively with DHS</u>."  9 FAM 203.6-3(a)(1) (emphasis added).

USCIS does "delegate[] the authority to process . . . beneficiaries to consular officers" in cases where the beneficiary is located in a country where USCIS does not maintain a field office.  9 FAM 203.3-4(b)(3)(b).  But even so, where State Department employees do have a role in case processing, they merely "act as agents to facilitate . . . case processing abroad."  9 FAM 203.6-3(a)(4).  Indeed, although State Department

10

employees may schedule interviews, determine travel eligibility, conduct security checks, among other case-processing tasks, 9 FAM 203.3-4(b)(3)(b), the State Department does not have the authority to decide that a beneficiary is ineligible for derivative refugee status. Instead, if the consular employee obtains information through the investigation that "suggests USCIS should re-review the eligibility of the transferred Form I-730 petition," the State Department must return the case to USCIS for further review.  9 FAM 203.3-4(a)(6); 9 FAM 203.6-3(1)(4); 9 FAM 203.6-10(b)(1)(A).

In its Reply, USCIS pushes back on what it calls in the "false premise that the State Department [is] merely an agent of USCIS," stating that it is "incorrect" that USCIS retains control over the State Department's travel eligibility determinations.  [Doc. 15 at 5].  But USCIS directs the Court to no statute or regulation that expressly confers authority over the case-processing portion of the I-730 petition process to the State Department.  *Cf. N.A.*, 2024 WL 1898470, at *5.  And the notion that State Department employees act as agents of USCIS in processing cases does not arise out of thin air; the FAM itself instructs consular employees that they are acting as agents of USCIS in processing follow-to-join cases and that DHS maintains exclusive authority over case-processing.  9 FAM 203.6-3(a)(1), (4).

USCIS also argues that 8 C.F.R. § 207.7(f)(2) "specifies a clear end point of USCIS's action" with respect to I-730 petitions.  [Doc. 15 at 2].  This regulation states that

> [w]hen a spouse or child of a refugee is outside the United States and the Request for Refugee/Asylee Relative is approved, USCIS will notify the refugee of such approval.  USCIS will send the approved request to the Department of State for transmission to the U.S. Embassy or Consulate having jurisdiction over the area in which the refugee's spouse or child is located.

11

8 C.F.R. § 207.7(f)(2).  However, the Court respectfully disagrees that any "clear end point" for USCIS's authority over I-730 petitions can be gleaned from this regulation, which simply states that USCIS will send the approved request to the relevant embassy or consulate, without any accompanying context and without any express language ending USCIS's authority over the case.  And USCIS's proposed interpretation of this provision is inconsistent with the fact that USCIS completes the case-processing steps for form I-730 cases where the beneficiaries are located in a country with a USCIS field office.  9 FAM 203.3-4(b)(3); *Mohamed*, 2024 WL 477098, at *2.  "It is difficult to reconcile that in locations where USCIS maintains a field office, no transfer of responsibility occurs but where USCIS does not have a field office, its responsibility fully transfers to [the State Department] with the petition."  *Mohamed*, 2024 WL 477098, at *3.

Finally, the Court acknowledges that, in Mr. Moore's declaration, he asserts that "[s]ince USCIS completed adjudication of the three Form I-730 petitions and currently has no responsibility for conducting travel eligibility determinations in Ethiopia, there is no further action USCIS can take on Plaintiff's matter at this time."  [Doc. 13-1 at ¶ 9].  While the Court respects the delicacies of inter-agency relations, Mr. Moore's (or USCIS's) own view of its relinquishment of authority does not negate the legal conclusion that USCIS maintains its exclusive authority over the adjudication and processing of I-730 petitions.

In sum, the Court cannot conclude that USCIS's authority over the processing of Plaintiff's Form I-730 petitions terminated once it approved the petitions and cannot conclude that Plaintiff's claims against USCIS are moot.  Accordingly, the Motion to Dismiss is **DENIED** to the extent it seeks dismissal of Plaintiff's claims against USCIS based on mootness.

## II.     Failure to State a Claim

Next, the State Department argues that Plaintiff fails to state a claim against it because he "fails to plead any facts about what the State Department did or failed to do after receiving the approved I-730 petitions." [Doc. 13 at 10 (emphasis omitted)]. It contends that USCIS's delay in adjudicating the I-730 petitions cannot be attributed to the State Department, nor does Plaintiff allege that it can be. [*Id.* at 10–11]. In the alternative, it asserts that if any such delay can be attributed to the State Department, that delay was not unreasonable. [*Id.* at 11–15].

Plaintiff first responds that he has sufficiently alleged that the State Department "directly contributed to th[e] delays" because he alleges that the State Department "is responsible for a years-long delay in scheduling [his] son's DNA testing, during which time USCIS took no action on his case." [Doc. 14 at 18 (citing Doc. 1 at ¶¶ 32–34, 50–58)]. He also argues that the delay "must be viewed as a whole" and suggests that "courts have looked to the agencies' collective failure to complete the process within a reasonable time" in assessing similar claims. [*Id.*].

"To state a claim for unreasonable delay under the APA, 'a petitioner must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting on that duty.'" *N.A.*, 2024 WL 1898470, at *7 (quoting *Liu v. Denayer*, No. 2:21-cv-06653-DMG-MRW, 2022 WL 17370527, at *2 (C.D. Cal. July 18, 2022)). "Where a plaintiff seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze both claims under the APA only." *Id*. To plausibly state a due process claim, the plaintiff must allege that he possessed a constitutionally protected liberty or property interest and that the plaintiff was deprived of that interest without due

13

process of law. *Cross Continent Dev., LLC v. Town of Akron*, 742 F. Supp. 2d 1179, 1186 (D. Colo. 2010); *A.M. ex rel. Youngers v. N.M. Dep't of Health*, No. 2:13-cv-00692-JB-WPL, 2015 WL 13668431, at *42 (D.N.M. Dec. 7, 2015).

The Court agrees with Defendants that Plaintiff's Complaint does not plausibly allege that the State Department contributed to the delay in processing his Form I-730 petitions. In opposing dismissal, Mr. Shougar relies on allegations that the State Department delayed the scheduling of his son's DNA test for two years. [Doc. 14 at 18]; *see also* [Doc. 1 at ¶¶ 52–57]. But the Complaint alleges that a DNA test was voluntary, [*id.* at ¶ 50], and it does not allege that USCIS was waiting on the DNA test to act on Mr. Shougar's petitions, *see* [*id.*]. Indeed, the Complaint alleges that USCIS was notified of the DNA test results in April 2023, [*id.* at ¶ 57], but still failed to promptly act on the petitions until Mr. Shougar filed this lawsuit, [*id.* at ¶ 59]. There are thus no allegations showing a causal connection between the State Department's delay in scheduling the DNA test to USCIS's delay in approving the applications.[5] Moreover, Mr. Shougar does not allege in his Complaint or argue in his Response that the State Department had any non-discretionary duty to schedule his son's DNA test, as required to state a claim under the APA or Mandamus Act. *N.A.*, 2024 WL 1898470, at *7; *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."). Instead, his claims are premised on a "non-discretionary duty to make a final decision on Mr. Shougar's follow-to-join applications." [Doc. 1 at ¶¶ 76, 80; *id.* at ¶ 84 ("Mr. Shougar

---

[5] Plaintiff's claims against the State Department are not based on any alleged delay in the State Department's case-processing of the approved petitions, given that the Complaint was filed before the petitions were approved.

. . . has a statutorily created entitlement to a final decision on his follow-to-join applications.")]. As the Court set forth above, USCIS has the exclusive authority to make a final decision on his I-730 petitions.

Furthermore, the Court declines to impute USCIS's delay onto the State Department by "look[ing] to the agencies' collective failure to complete the process within a reasonable time." [Doc. 14 at 18]. Plaintiff has not directed the Court to any substantive authority to support this principle and, absent any such authority, the Court declines to hold that the State Department can be held liable for the independent actions or inactions of USCIS. *See Throw v. Mayorkas*, No. 3:22-cv-05699-DGE, 2023 WL 2787222, at *4 (W.D. Wash. Apr. 5, 2023) (declining to "impute USCIS's delay to the State Department"); *cf.* 5 U.S.C. §§ 701(b)(1), 706(1) (the APA permitting courts to "compel agency action unlawfully withheld or unreasonably delayed" and defining "agency" as "each authority of the Government of the United States" (emphasis added)).

For these reasons, the Court finds that Mr. Shougar does not state a claim against the State Department. The Motion to Dismiss is **GRANTED** insofar as it seeks dismissal of those claims.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) The Motion to Dismiss [Doc. 13] is **GRANTED in part** and **DENIED in part**; and

(2) Plaintiff's claims against Secretary Bitter are **DISMISSED without prejudice**.

DATED: June 20, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge